UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CECIL JOHNSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 3:09-1139 |
| v. ) | JUDGE ECHOLS |
| ) | |
| DR. BRUCE LEVY, in his official ) | |
| capacities as the Chief Medical ) | |
| Examiner for the State of ) | |
| Tennessee and Medical Examiner ) | |
| for the Metropolitan Government ) | |
| of Nashville and Davidson County, ) | |
| Tennessee; and RICKY BELL, in his ) | |
| official capacity as Warden ) | |
| Riverbend Maximum Security ) | |
| Institution, ) | |
| ) | |
|     Defendants. ) | |

### TEMPORARY RESTRAINING ORDER

Plaintiff Cecil M. Johnson, an inmate at the Riverbend Maximum Security Institution in Nashville, Tennessee, is scheduled to be executed by the State of Tennessee at 1:00 a.m. CST on Wednesday, December 2, 2009. On the eve of his execution, after his Motion to Stay was denied by the United States Court of Appeals for the Sixth Circuit and while his petition for certiorari was pending before the United States Supreme Court, Plaintiff filed a Complaint under 42 U.S.C. § 1983 in this Court, along with a Motion for Temporary Restraining Order and Preliminary Injunction. (Docket

1

Entry No. 3).[1] By way of those filings, Plaintiff requests that the Court enjoin Defendants from performing an autopsy on his body after he is executed and argues that such an autopsy would violate his rights under the First Amendment to the United States Constitution.

Plaintiff claims that he has a "sincerely held religious belief" that performing an autopsy on his body would amount to desecration and has filed a sworn "Notice of Refusal to Perform Autopsy" setting forth that belief. He has also filed a sworn declaration from his spiritual advisor, Reverend James Thomas, who indicates that Plaintiff has clearly indicated that Plaintiff does not desire an autopsy of his body based upon his religious beliefs and that if the State is allowed to perform an autopsy that "would be a fundamental overturning of his religious conscience and his relationship to Jesus Christ." (Johnson Decl. ¶ 5).

The State has filed a "Response in Opposition to Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order" (Docket Entry No. 5). The State asserts that the governing statute, T.C.A. § 38-7-106(a), grants authority to a county medical examiner to order and perform autopsies in certain circumstances, including after prisoners are executed. The State claims that this

---

[1]Plaintiff has also filed a Motion for Leave to Proceed *In Forma Pauperis* (Docket Entry No. 2). That request will be granted because Plaintiff is without the financial ability to pay the filing fees and his claim is not meritless on its face.

statute is one of neutral applicability and is neutral as to religious beliefs. Therefore, if an autopsy performed pursuant to the statute impacts the Plaintiff's sincere religious beliefs, such conflict does not constitute a violation of Plaintiff's First Amendment right to freely exercise his religion. The State also argues Plaintiff's request for injunctive relief is purposely dilatory in waiting until only hours before Plaintiff's execution to seek relief from the statutorily authorized autopsy, and Plaintiff had ample time to file his constitutional challenge much earlier. Therefore, the State alleges injunctive relief request comes too late and should be denied.

In deciding whether to grant a temporary restraining order ("TRO"), the Court must consider four factors: (1) whether the party seeking the TRO has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the TRO is not entered; (3) the potential harm the TRO would cause the opposing party; and (4) the public interest. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). "'These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together.'" Northeast Ohio Coalition for Homeless and Service Employees, 467 F.3d 999, 1009 (6th Cir. 2006)(quoting, Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991)). "For example, the probability of success that must be

3

demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer." Id.

Plaintiff has at least some likelihood of success on the merits because the free exercise clause of the First Amendment prohibits a state from placing a substantial burden on sincerely held religious belief without having a compelling interest which justifies the burden. See, Wilson v. NLRB, 920 F.2d 1282, 1289-90 (6th Cir. 1990). However, the Supreme Court has held that generally applicable religiously neutral laws that have the effect of burdening a particular religious belief or practice need not be justified by a compelling interest. Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990).

Further, two judges of this Court have issued temporary restraining orders against invasive post-execution autopsies because of inmate claims that such autopsies would violate their free exercise of religion. See, Workman v. Levy, 2007 WL 1521000 (M.D. Tenn. 2007); Alley v. Levy, 2006 WL 1804605 (M.D. Tenn. 2006)(Trauger, J.). Those decisions, however, have been cast into some doubt because the Tennessee legislature on July 1, 2008 revised T.C.A. § 38-7-106(a) by specifically adding that a "county medical examiner may perform or order an autopsy on the body of any person in a case involving . . . executed prisoners." Tenn. Code Ann. § 38-7-106(a). This is a clear indication of legislative

intent to expand the right of the county medical examiner to conduct autopsies on prisoners following their execution.

There now may be some question as to the strength of likelihood of Plaintiff's success on the merits, and the first factor is more evenly balanced between the parties. However, that is something which can be given due consideration if a temporary restraining order is issued which will maintain the *status quo* until the Court can address the request for a preliminary injunction on the merits.

The second factor favors the issuance of a temporary restraining order if you consider that Plaintiff will suffer irreparable harm if he learns his body will be autopsied and others, such as his family, may suffer thereafter.

The third factor regarding the potential harm caused to the State if the temporary restraining order is issued would seem to favor the State because prohibiting the autopsy would prohibit the State from gathering medical and scientific evidence to support and defend the use of its designated lethal injection protocol for executing criminal defendants. This designated method of execution has been under attack with allegations that it is unconstitutional, because it constitutes cruel and unusual punishment. Finally, the fourth factor weighs the public's interest in conducting autopsies of executed prisoners. The public has an interest in insuring that the laws passed by their legislative representatives are enforced

and that legally sanctioned executions are conducted in accordance with the law and individual constitutional guarantees.

On the other hand, it does not appear that Defendants will suffer any harm in maintaining the status quo until the Court can conduct a full hearing on Plaintiff's motion for a preliminary injunction because if the Court ultimately determines the matter in Defendants' favor, the State will be able to conduct the autopsy that it desires. For the same reason, the public interest will not be harmed by temporary injunctive relief pending a preliminary injunction hearing.

After balancing the factors and the equities on both sides, it is the opinion of the Court that the issuance of a temporary injunction will maintain the status quo until the Court can hear evidence on whether that temporary order should be transformed into an injunction. Under the circumstances of this case, no bond is required.

Accordingly, the Court rules as follows:

(1) Plaintiff's Motion For A Temporary Restraining Order and Preliminary Injunction is hereby GRANTED insofar as Plaintiff seeks a Temporary Restraining Order and the Defendants are HEREBY RESTRAINED from performing an autopsy on the body of Cecil C. Johnson pending further Order from this Court;

(2) This prohibition against performing an autopsy at this time includes forensic, pathological, or other action, testing or

6

procedure on Cecil C. Johnson's body or any part of his body (whether or not considered part of an autopsy or pathological investigation) that involves puncturing, cutting, sampling or testing the body. The Court does not prohibit an external examination of the body after execution.

(3) Pursuant to Federal Rule of Civil Procedure 65, this Temporary Restraining Order applies to all persons, officers, agents, servants, employees, and attorneys in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise.

(4) A hearing is scheduled for **Thursday, December 10, 2009, at 1:00 p.m.** to consider Plaintiff's request for a preliminary injunction.

IT IS SO ORDERED this 2nd day of December, 2009 at 12:35 a.m.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE